IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUNCHENG KAO,<br><br>    Plaintiff,<br>v.<br><br>HENGDA KITE<br><br>    Defendants. | Case No. 25-cv-8491<br><br>Hon. Jorge L. Alonso |

**MEMORANDUM IN SUPPORT OF MOTION BY DEFENDANT
HENGDA KITE TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6)**

**I.     Introduction**

The Court should dismiss Plaintiff's complaint for design patent infringement against Defendant Hengda Kite ("Defendant") because no reasonable finder of fact could conclude that Defendant's accused product meets the limitation of Plaintiff's patented design.[1] The design at issue encompasses the entirety of a particular design of kite as shown and described in U.S. Patent No. D967,279S (the "'279 patent") (Exhibit 1). However, the accused product does not encompass any of the design features that distinguish the product from the prior art and that could possibly contribute to an overall alternative design from the prior art. Plaintiff's accusations of infringement are impermissibly based on broad generalities, and they fall apart under the proper test for infringement which requires accounting for the prior art and determining whether the totality of the accused design could possibly be confused with the protectable ornamental design. Here, the distinct and obvious differences in the patented and accused designs dictate that no reasonable finder of fact could find infringement. Indeed, Plaintiff could not even be bothered to prepared a claim chart that compared the accused product to the figures of the claim. That alone is reason to dismiss the complaint and is a tacit admission by Plaintiff that the accused product **does not** include the design features set forth in the patent at issue. Plaintiff's complaint should be dismissed with prejudice under Rule 12(b)(6).

**II.    Factual Background**

Defendant Hengda Kite is online e-commerce stores operating on Amazon. The store specializes in the sale of kites. An image of its kite is shown, right:


**FIG 1**: Hengda Kite (Ex. 2)

---

[1] This case originally named Orange Cloud as a Defendant. Orange Cloud moved to dismiss the complaint with prejudice. Rather than waiting for the Court, Plaintiff filed an amended complaint, but Plaintiff failed to name Orange Cloud in the Amended Complaint. Plaintiff failed to file any notice of dismissal. Accordingly, this Court should confirm that Orange Cloud is dismissed with prejudice.

As shown the Hengda kite features a deep curvature that rounds off near the wing tips. Similar designs have long been part of the prior art. The Besra kite, sold in 2018 is shown below.



| **FIG 2**: The Besra Kite | **FIG 3:** Wing tip of the Besra Kite |

The Besra Kite (Exhibits 3-5) features dramatic curvature between the wing tips and central tail, and the wing tips also include distinct angular portions. A similar kite design it depicted in Chinese Patent No. CN 304572766 which published on April 6, 2018 (Exhibit 6):



**FIG 4**: Design claimed in Chinese Patent No. CN 304572766

It too includes a curved portion between the wing tips and the tail portion.

The same design is exhibited by Chinese Patent No. CN302607041 which was published over a decade ago on October 16, 2013 (Exhibit 7). It features deep curvature between the wing tips and tail portion, and the wing tips have a distinct angular portion.



FIG 5: Design claimed in Chinese Patent No. CN302607041

3

### III. Standard Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows the dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Plaintiff's factual allegations in the complaint must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept as true any unsupported conclusions, unsupported inferences, "threadbare recitals of elements of a cause of action" or inferences drawn by plaintiff if they are unsupported by the facts of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662 at 678. Nor must the court accept legal conclusions disguised as factual allegations. *Bell Atlantic*, 550 U.S. at 555 (citations omitted).

### IV. Scope of Design Patents and Questions of Infringement

Design patents can only claim ornamental designs, *see* 35 U.S.C. § 171, and cannot claim the structural or functional aspects of the article or device. 37 C.F.R. § 1.153(a); *Lee v. Dayton– Hudson Corp.,* 838 F.2d 1186, 1188 (Fed.Cir.1988). Design patents protect only "the novel, ornamental features of the patented design," limited to the specified article as it is shown in the patent. *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). Design patents "have 'almost no scope' beyond the precise images shown in the drawings." *In re Mann,* 861 F.2d 1581, 1582 (Fed. Cir. 1988); *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1333 n.1 (Fed. Cir. 2014) (quoting *In re Mann*). "[A] design patent only protects the novel, ornamental features of the patented design." *Id*. The scope of a design patent claim "must be limited to the ornamental aspects of the design, and does not extend to 'the broader general design concept.'" *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) (quoting *OddzOn Prod.*).

To determine if a design patent is infringed, courts apply the "ordinary observer test,"

4

which considers whether "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same," such that the resemblance would deceive the observer into "purchas[ing] one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (*quoting Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)). The test for infringement is the ordinary observer test in which the ordinary observer "is deemed to view the differences between the patented design and the accused product in the context of the prior art." *Egyptian Goddess*, 543 F.3d at 676. "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Id*. at 678. "And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id*. Thus, with the prior art in mind, the test for infringement is: "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Co. v. White,* 81 U.S. 511, 528 (1871) accord *Egyptian Goddess*, 543 F.3d at 670.

As an example of how the ordinary observer test is applied, this Court may review the Federal Circuit's analysis in *Ethicon*. There, the Federal Circuit examined designs for two handheld devices (right) *Id*. at 796 F.3d 1336.



The claimed and accused designs are depicted below:

D'804 patent, Fig. 1    Covidien's accused product

The Federal Circuit held, "[w]e agree with the district court that there is no genuine dispute the

claimed and accused designs of an ultrasonic surgical device are **plainly dissimilar**." *Id*. emphasis added. The Court explained:

> "On a general conceptual level, both designs include an open trigger, a small activation button, and a fluted torque knob in relatively similar positions within the underlying ultrasonic device. **Similarity at this conceptual level, however, is not sufficient to demonstrate infringement of the claimed designs**. As discussed in section II.C.2., because each of these components has a functional aspect, the underlying elements must be excluded from the scope of the design claims at this general conceptual level. And when the remaining ornamental features of those components are compared, as a whole, to the corresponding ornamental features of Covidien's accused ultrasonic surgical shears, **the dissimilarities between the designs are plain**.

*Id*. emphasis added. Similarly, in a case in this District, the court found that the designs, right, are plainly dissimilar as a matter of law. *Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1003-05, 1011-12 (N.D. Ill. 2010), aff'd, 412 F. App'x 304 (Fed. Cir. 2011).

 

Although *Ethicon* and *Competitive Edge* were decided on summary judgment, the courts' noninfringement findings could have been made at the pleadings stage since the findings turned purely on what the designs looked like, not on evidence uncovered in discovery. Indeed, courts routinely grant early dispositive motions in design-patent cases when the claimed and accused designs are dissimilar. *See, e.g.*, *Young v. Stone*, 2014 WL 4271624, at *3 (N.D. Ill. Aug. 28, 2014) (granting Rule 12(c) motion because "[a]n ordinary observer is unlikely to believe that the patented design and the accused design are the same"); *Homy Casa Ltd. v. Jili Creation Tech. Co.*, No. 2:24-CV-00763, 2024 WL 4677664, at *6 (W.D. Pa. Nov. 5, 2024)(Dismissal with prejudice under Rule 12(b)(6) because no reasonable fact finder could find infringement and amendment would be futile); *Cross v. Dick's Sporting Goods, Inc.*, 2022 WL 1014996, at *3

(N.D. Ind. Apr. 5, 2022) (granting Rule 12(b)(6) motion because the "designs are plainly dissimilar"); *MSA Prods., Inc. v. Nifty Home Prods., Inc.*, 883 F. Supp. 2d 535, 540-42 (D.N.J. 2012) (granting Rule 12(b)(6) motion); *Performance Designed Prods. LLC v. Mad Catz, Inc.*, 2016 WL 3552063, at *4-6 (S.D. Cal. June 29, 2016) (granting Rule 12(b)(6) motion).

**V.      The Accused Products Are Plainly Dissimilar to the '279 Patented Design, Precluding Any Possible Determination of Infringement**

      **A.      Plaintiff's Complaint Is an Admission by Omission**

Plaintiff fails to provide an adequate comparison of the accused product to the patent at issue. "Indeed, '**all** of the ornamental features illustrated in the figures [of the patent] **must be considered** in evaluating design patent infringement. This is because "[a] patented design is defined by the drawings in the patent, not just by one feature of the claimed design." ' " *Tecumseh Prods. Co. v. Briggs & Stratton Corp.*, 295 F. Supp. 2d 902, 909 (E.D. Wis. 2003) *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1378 (Fed.Cir.2002)[2] (quoting *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1450 (Fed.Cir.1993)), emphasis added. "Such being the case, 'the 'ordinary observer' analysis is not limited to the ornamental features of a subset of the drawings, but instead must encompass the claimed ornamental features of all figures of a design patent.' " *Id*. quoting *Contessa* at 1379. By statute, "[i]f features appearing in the figures are not desired to be claimed, the patentee is permitted to show the features in broken lines to exclude those features from the claimed design, and the **failure to do so signals inclusion of the features in the claimed design**." *Contessa,* 282 F.3d at 1378, emphasis added.

---

[2] abrogated on other grounds by *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 671 (Fed. Cir. 2008); see also *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 640 (Fed. Cir. 2015)

Here, the '272 patent includes glaringly obvious solid line images of numerous features including brackets on the top and bottom that are also visible from the sides (features that the patent goes out of its way to highlight through blown-up images in Figs 9, 12, 14, 15, and 18:



Where are those features identified in the Complaint and where are they (allegedly) in the accused product? Such are reasonable questions, and the answer to both is: they are not. They appear nowhere in the allegations. There is no comparison of any of those images to the accused product and the reason is simple, they do not exist in the accused product. This alone is sufficient for the Court to dismiss Plaintiff's complaint. Still, if the Court is inclined to perform a more thorough investigation, the result is the same. Plaintiff fails to set forth a claim of patent infringement because no reasonable person could find the *claimed design* to be confusingly similar with the accused product under the applicable ordinary observer test.

B. **Knowledge of the Prior Art is Required for Any Assessment of Infringement**

As stated above, the test for infringement is the "ordinary observer" test. And as part of that test, "[t]he ordinary observer looks to the prior art designs when assessing infringement as the prior art can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer." *Egyptian Goddess* at 677. Thus, an assessment of the prior art is the first step in determining whether there could possibly be infringement.

Here, the prior art includes at least the Besra Kite ("Besra"), the kite of CN302607041 ("CN041"), and the kite of CN 304572766 ("CN766"). Plaintiff's attempts to plead around the existence of this prior art by referring to some mysterious "expert opinion obtained by Plaintiff." Such assertions do not constitute well-pleaded facts but instead baseless legal conclusions respecting what, by law, constitutes prior art.

Under 35 U.S.C. §102, a party is entitled to a patent "unless **(1)** the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." The statute does not limit itself to "patented in the United States." It does not state "patented in English in an easily searchable database using keywords to assist with searching." The only requirement is that it be patented. That is exactly what CN041 and CN766 reflect. They are patents on kites. The Besra prior art, on the other hand is a printed publication that was even cited by the Examiner during prosecution. Plaintiff's concocted arguments about the Chinese patents conflate the what constitutes "patented" with what constitutes a "printed publication." It is only the latter that is subject to considerations of dissemination such that a person interested in the subject matter could find it through reasonable diligence. *See SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008).

Plaintiffs assert that the accused product and the '279 patent are both triangular kites, and therefore the accused products infringe. However, the mere fact that the patents and accused products are similar on a broad conceptual level is insufficient to find infringement. The Federal Circuit's analysis in *Ethicon* made exactly that point when it confirmed conceptual similarity fails to demonstrate infringement. 796 F.3d at 1336.

First, the court must examine the prior art (left) as compared to the patented design (right).



| FIG 6: Prior art | FIG 7: Design claimed in '279 patent |

The prior art exhibits the same overall shape and design as the patented design. All have an overall triangular shape and dramatic curvatures between the wing tips and the tail portions. The prior art includes angled wing tips, just like the patent, and long, rectangular tail sections, again like the patent.[3]

However, the patent specifically calls out the connections between the crossbar and the wing in Figures 15 and 18 of the '279 patent:



| FIG 8: Figure 7 of the '279 patent | FIG 9: Figure 8 of the '279 patent |

---

[3] The Federal Circuit has held that the court may take judicial notice of published patents, even those not formally before the court, under Fed.R.Evid. 201(b) & (c). See *Pepitone v. Am. Standard, Inc.*, 983 F.2d 1087, n. 1 (Fed. Cir. 1992). Additionally, the court may take judicial notice of things of common knowledge and used throughout the country. *Brown v. Piper*, 91 U.S. 37, 43 (1875). The Besra Kite is further of record as it was identified by the Examiner during prosecution.



| **FIG 10**: Figure 15 of the '279 patent | **FIG 11**: Figure 18 of the '279 patent |
|---|---|

These connections mark the only significant differences between the presently available prior art and the '279 design. Keeping the prior art in mind, the Court must now turn to a comparison of the allegedly infringing products to the '279 patent. It is these stark differences and intentionally claimed features that draw the eye and contribute to the overall ornamental design of the '279 patent. See *Top Brand LLC v. Cozy Comfort Co. LLC,* 143 F.4th 1349, 1358 (Fed. Cir. 2025) ("The proper inquiry is whether the accused design has appropriated the claimed design as a whole, but this analysis necessarily focuses on the similarities or differences of individual features of the claimed and accused designs, as well as the existence of other non-common features and the arrangement of the features in the overall design.")

      C.      **The Accused Product and the '279 Patent Are Plainly Dissimilar**

Here, when the two designs are examined (while keeping the prior art in mind), the stark differences between them become readily apparent such that no reasonable finder of fact could confuse one for the other. Moreover, the similarities between the designs of the prior art and the patented design dictate that "small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Egyptian Goddess*, 543 F.3d at 676. The prior art references are all nearly identical to the '279 design with the exception of connection points of the crossbar.

Defendant's products are plainly dissimilar from the claimed design in the '279 patent.

11

Multiple features of the accused kite are unique from the Plaintiff's design. The curvature of the wings in the is a stark and obvious difference that alone distinguishes the overall appearance of the accused products from the '297 patent. As seen in Figures 12-15, it is clearly evident that the wing claimed in the '279 patent has a significantly more accentuated and defined curve.



| **FIG 12**: '279 Patent | **FIG 13:** Hengda Kite | **FIG 14**: '279 Patent | **FIG 15**: Hengda Kite's wing |

Aside from that, the wing tips of the accused products are distinctly different. In Figure 16, it is clearly shown that the '279 patent claims an inward curvature and an additional ornamental point at the wing tip. (the inward curvature and additional ornamental point indicated in red in the figure below). Conversely, the Hengda Kite's wing tip contains an outward curvature unlike the '279 patent claimed design. (the outward curvature indicated in green in the figure below).



| **FIG 16**: Wing Tip Claimed in the '279 Patent | **FIG 17**: Hengda Kite's Wing Tip |

Even more poignant is the complete absence of the connection design that Plaintiff highlighted as part of its patented design. The accused product utilizes a male/female connection

12

that is part of an angled tubular section. The connection system is visible on the underside of the kite and completely invisible on the top side. The connection system claimed in the '297 patent—the only thing that appears to set the design apart from the presently available prior art—is an obvious C-clip the curves around the wing support bar and is clearly visible from both the underside and top side of the kite.



**FIG 24**: Connections Claimed in the '279 Patent

**FIG 25**: Hengda Kite's Connections

This results in a '279 patent design with clunky, obvious clips that disrupt the overall outline of the wing by remaining exposed over the support bars. It is in distinct contrast to the sleek hidden design of the accused product where the connections are invisible from the top and integrate with the angles of the support bars on the bottom.

As shown in Figs. 2, 3, and 16 of the '279 patent (below), its design includes a specialized pocket (visible on one side, but not on the reverse side) and a uniform transition from the wing into a perfectly rectangular tail:





All of those tail features—which the '279 patent specifically calls attention to through Figure 16)—are distinctly different in the accused product:



Indeed, in the Hengda kite, a distinct curved border separates the kite and the tail. Rather than being uniformly formed and having a pocket in the tail, the tail of the Hengda kite is simply sewn onto the bottom of the wing.

The differences noted above are some of the obvious distinctions between the '297 patent and the accused products (distinction made all the more evident in view of the near identical prior art) all of which combined to confirm that the accused products display an overall different appearance from the patents at issue. These differences confirm that Plaintiff cannot establish an infringement claim.

Accordingly, when applying the ordinary observer test while understanding the proximity

of the prior art to the design at issue, it is readily apparent that the overall ornamental designs of the '279 patent and the accused products are plainly dissimilar that no reasonable finder of fact could conclude that the accused products meet the ornamental appearance of the '279 claim.

## VI. The Court Should Dismiss Plaintiff's Complaint

Plaintiff's design patent infringement claim fails the ordinary observer test because—in view of the prior art—the clear differences between exhibited by the Hengda Kite render the overall design plainly dissimilar from the ornamental design of the '279 Patent. The scope of the '297 Patent claim cannot change, nor can the design of the accused product. Thus, no amendment could possibly be made to the complaint that would set forth a claim upon which relief could be granted. Any amendment would be futile. Therefore, the only appropriate course of action in this case is to dismiss Plaintiff's claim of infringement with prejudice just as the Federal Circuit confirmed was appropriate in, for example, *Colida v. Nokia, Inc.,* 347 F. App'x 568, 570 (Fed. Cir. 2009). (Dismissal of design patent infringement affirmed under Federal Rule 12(b)(6) as the "infringement claims were facially implausible and provided the district court with no basis on which to reasonably infer [infringement]").

## VII. Conclusion

Plaintiff impermissibly relies on similarities in the general concept of a triangle kite in making broad-brush accusations of infringement. Its purported infringement analysis is contrary to law. When appropriately considering the prior art, and giving proper attention to the differences among the accused product and patented designs, which differences stand out distinctly in view of the prior art, the only conclusions are that the designs are plainly dissimilar and that no reasonable finder of fact could determine that there is any likelihood of confusion as between the distinct overall designs of the Hengda Kite as compared to the ornamental design of the '279 patent. This Court should dismiss the complaint with prejudice.

15

Dated: January 29, 2026

Respectfully submitted,

/s/ *Matthew De Preter*
Matthew De Preter
ARONBERG GOLDGEHN DAVIS & GARMISA
225 W. Washington, St. Suite 2800
Chicago, IL 60606
312-755-3153
cdepreter@agdglaw.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 29, 2026 a true and correct copy of the foregoing was filed electronically with the Clerk of the Court through the Court's CM/ECF System, which will provide electronic notification of such filing to all attorneys of record.

/s/ *Matthew De Preter*
Matthew De Preter
*One of the Attorneys for Defendant*